UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GREGORY TROTTER,

                    Petitioner,            Case No. 2:13-cv-14824
                                        Hon. Denise Page Hood

v.

MARY BERGHUIS,

                    Respondent.

_____/

**OPINION AND ORDER (1) DENYING AMENDED PETITION FOR WRIT OF HABEAS CORPUS AND , (2) DENYING CERTIFICATE OF APPEALABILITY, AND (3) DENYING PERMISSION TO APPEAL IN FORMA PAUPERIS**

This is a habeas case brought by a Michigan prisoner under 28 U.S.C. § 2254. Gregory Trotter ("Petitioner"), was convicted after a jury trial in the Wayne Circuit Court of first-degree criminal sexual conduct, MICH. COMP. LAWS § 750.520b; kidnapping, MICH. COMP. LAWS § 750.349; second-degree criminal sexual conduct, MICH. COMP. LAWS § 750.520c; and unarmed robbery, MICH. COMP. LAWS § 750.350. Petitioner was sentenced to concurrent terms for his convictions, the longest of which is a 35 to 60 year sentence for his first-degree criminal sexual conduct conviction.

The amended petition asserts fourteen grounds for relief: (1) Petitioner was denied a fair trial by admission of identification evidence resulting from

an unduly suggestive photograph lineupl; (2) the police violated the Fourth Amendment by conducting a search of Petitioner's bedroom and counsel was ineffective for failing to raise an objection; (3) the prosecutor committed misconduct at trial; (4) evidence related to Petitioner's buccal swab was improperly admitted; (5) insufficient evidence was admitted to sustain the verdict; (6) Petitioner is actually innocent; (7) Petitioner was denied an opportunity to take a polygraph exam; (8) the prosecutor withheld exculpatory evidence; (9) Petitioner was denied his right to counsel at critical stages of the proceedings; (10) Petitioner was denied the effective assistance of counsel; (11) Petitioner's sentence was improperly increased on account of his failure to admit his guilt; (12) Petitioner was sentenced based on inaccurate information; (13) the trial court improperly characterized his petition for DNA testing as a request for successive post-conviction review; and (14) Petitioner is entitled to DNA testing.

The Court finds that Petitioner's claims are without merit and barred from review by his state court procedural defaults. Therefore, the petition will be denied. The Court will also deny Petitioner a certificate of appealability and deny permission to appeal in forma pauperis.

# I. Background

The Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> This case stems from the random and violent kidnapping, forcible rape, and robbery of a 15-year-old girl, who was held captive for approximately three hours. The assailant did not attempt to shield his identity during the ordeal, and the victim identified defendant as the assailant in a photograph array and at trial. The victim was also able to inform the police regarding the location of the house, and the room within the house, where defendant had taken and raped her after he had abducted the victim from a nearby street. The owner of the house testified that he had known defendant for about a year and that defendant had been helping him fix up houses, including the house where the sexual assault occurred. The home's owner was making repairs to the house, but not actually living there, and he testified that defendant had a bed in the room where the assault took place. According to the home's owner, defendant would stay in the house to watch it at nighttime, and he asserted that defendant was staying at the house during the time that the kidnapping and rape took place. Furthermore, DNA analysis of a vaginal swab taken from the victim showed a match with defendant's DNA. A forensic scientist for the Michigan State Police testified that the probability of selecting a random unrelated individual in the African-American population with the same DNA profile was one in 4.277 quintillion people; there are approximately .77 quintillion people in the world according to the forensic scientist. The evidence of defendant's guilt was overwhelming.

*People v. Trotter*, No. 306458, 2013 WL 116257, at *1 (Mich. Ct. App. Mar. 21, 2013).

Following his conviction and sentence, Petitioner filed a claim of appeal in the Michigan Court of Appeals. His brief on appeal filed by appellate counsel raised the following claims:

> I. Whether Defendant was denied due process of law by the unduly suggestive photographic lineup and the trial court erred in denying his motion to suppress the identification. US Const Am XIV.
>
> II. Whether the search was illegal as the homeowner did not have the authority to consent to the search of Defendant's bedroom and counsel was ineffective for failing to move to suppress the evidence obtained as a result of the illegal search. US Const Am IV.
>
> III. Whether the prosecutor denied Defendant a fair trial by stating facts not in evidence that constituted inadmissible hearsay and by using the complainant's prior hearsay statements to improperly bolster her credibility; counsel was ineffective in failing to object. US Const Am VI; XIV.
>
> IV. Whether Defendant must be resentenced where the trial court penalized him at sentencing for failure to admit guilt. US Const Am V, VI, XIV.
>
> V. Whether Defendant was sentenced on the basis of inaccurate information in violation of his due process rights. US Const Am XIV.

Petitioner also filed his own supplemental pro se brief, raising an additional two claims in the Michigan Court of Appeals:

> I. Whether Defendant received a fair trial where the lack of an evidence tag failed to make the nexus for a proper foundation of the buccal swab alleged to have been taken from Mr. Trotter

violated his Fourteenth Amendment right under the U.S. Const., Amend, XIV and the Mich. Const. Art I, § 17?

II. Whether Mr. Trotter is entitled to a new trial as he was denied effective assistance of counsel due to defense counsel's failure to object to the admission of [the buccal swab] where the prosecution produced inadequate foundational evidence to justify its admission?

The Michigan Court of Appeals affirmed Petitioner's convictions and sentences in an unpublished opinion. *Trotter*, 2013 WL 1165257.

Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims that he raised in the Michigan Court of Appeals. The Michigan Supreme Court denied the application because it was not persuaded that the questions presented should be reviewed by the Court. *People v. Trotter*, 834 N.W.2d 491 (Mich. 2013) (Table).

Petitioner then filed the instant case and a motion to stay the case so that he could return to the state courts and exhaust additional claims. The Court granted the motion. Petitioner returned to the trial court and filed a motion for relief from judgment, raising the following claims:

I. There was insufficient evidence to convict Defendant and his conviction was in violation of his state and federal rights to due process. US Const. Amend. XIV.

II. Defendant's warrantless arrest was illegal as there was no

probable cause and Defendant was not Mirandized. US Const, Amends IV, XIV; Mich Const 1963, Art 1, § 11.

III. Defendant was denied his statutory right to a polygraph examination. U.S. Const. Amends. V, VI, XIV; Mich. Const. 1963, Art 1, § 17.

IV. The prosecution committed multiple misconducts, denying Defendant a fair trial, including withholding exculpatory DNA test results (newly discovered evidence). U.S. Const Am XIV.

V. Defendant was denied his right to counsel at critical stages of prosecution. US Const Am XIV.

VI. Defendant's US Const Amend VI and XIV rights were violated when he was denied effective assistance of: (A) trial counsel for various cumulative errors, and (B) appellate counsel when obviously strong, critical issues were neglected.

VII. Defendant was deprived of his right to due process where he is actually innocent of the crimes and sentences he stands convicted. US Const. Amend. XIV; Mich Const 1963, Art 1, § 17.

The trial court denied the motion for relief from judgment. It found that review of Petitioner's new claims was barred because he failed to demonstrate "actual prejudice" under Michigan Court Rule 6.508(D)(3). Dkt. 27-13, at 10. The court also determined that the new claims lacked merit. Id.

Petitioner then filed an application for leave to appeal in the Michigan Court of Appeals. The Michigan Court of Appeals denied the application for leave to appeal for failure to establish relief under Michigan Court Rule 6.508(D)(3)(a) and (b). *People v. Trotter*, No. 327847 (Mich. Ct. App. Aug. 13,

2015). Petitioner applied for leave to appeal that decision in the Michigan Supreme Court, but it was denied under Rule 6.508(D). *People v. Trotter*, 880 N.W.2d 577 (Mich. 2016) (Table).

Petitioner then moved to reopen this case, raising all the claims presented to the state courts on direct appeal an on post-conviction review. Respondent filed the relevant part of the state court record and a responsive pleading. Petitioner filed a reply brief, and the matter is now ready for decision.

## II. Standard of Review

28 U.S.C. § 2254(d)(1) curtails a federal court's review of constitutional claims raised by a state prisoner in a habeas action if the claims were adjudicated on the merits by the state courts. Relief is barred under this section unless the state court adjudication was "contrary to" or resulted in an "unreasonable application of" clearly established Supreme Court law.

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003), quoting

*Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

"[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) quoting *Williams*, 529 U.S. at 413.

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011), quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103 (internal quotation omitted).

## III. Analysis

A. Suggestive Identification Procedure (Claim 1)

Petitioner first claims that his trial was rendered fundamentally unfair by the introduction of identification testimony of the victim that resulted from an unduly suggestive photographic line up procedure. He asserts that the individuals depicted in the photographic array were physically dissimilar to him, and that only his photograph depicted a man with a smile. This claim was presented to and rejected by the Michigan Court of Appeals on the merits in Petitioner's direction appeal. The state court adjudication was reasonable.

The use by the police of an identification procedure may at times pose due process concerns—but it does so "only when law enforcement officers use an identification procedure that is both suggestive and unnecessary." *Perry v. New Hampshire*, 565 U.S. 228, 238-39 (2012). Even then, suppression of the evidence is warranted only if, on the totality of the circumstances, "improper police conduct created a 'substantial likelihood of misidentification.'" *Id.* (quoting *Neil v. Biggers*, 409 U.S. 188, 201 (1972)). The "corrupting effect of the suggestive identification" must be weighed against factors indicating that the eyewitness identification is reliable, including "the opportunity of the witness to view the criminal at the time of the crime, the

witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977).

Here, after reciting the correct constitutional standard, the state appellate court rejected Petitioner's claim as follows:

> "Physical differences among the lineup participants do not necessarily render the procedure defective and are significant only to the extent that they are apparent to the witness and substantially distinguish the defendant from the other lineup participants." *People v. Hornsby*, 251 Mich. App. 462, 466 (2002). Generally, physical differences affect the weight given to an identification and not its admissibility. *Id.* The fact that defendant was the only person in the array who was smiling did not substantially distinguish him for purposes of identification, and the other men pictured shared similar physical characteristics with defendant. All of the men in the array, including defendant, are African-American, have similar complexions, have short hair, have some kind of facial hair, and appear to be around 40 to 50 years old. The photo array did not violate defendant's due process rights, given that it was not so impermissibly suggestive that it gave rise to a substantial likelihood of misidentification. *People v. Harris*, 261 Mich. App. 44, 51 (2004). Moreover, even if the photo array was unduly suggestive, the victim had an independent basis to identify defendant in court, where she was able to observe defendant for approximately three hours in close proximity, where the victim never failed to identify defendant as her assailant, and where her description of defendant was generally accurate. *People v. Gray*, 457 Mich. 107, 114-1162 (1998).

*Trotter*, 2013 WL 1165257, at *2.

The state court reasonably decided that the eyewitness identification procedure did not violate his due process rights. See *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations."). A color copy of the photographic array appears at Dkt. 27-14, p. 58, Pg ID 1475. As reasonably found by the state appellate court, it depicts six individuals whose physical characteristics are similar enough so as to avoid being unduly suggestive. While Petitioner's photograph (No. 2) depicts the only smiling individual, nothing about the victim's description of the man who raped her or his conduct during the assault would suggest that smiling was a feature suggesting the perpetrator. Furthermore, the Court notes that the incident spanned approximately three hours, giving the victim a lengthy, harrowing, opportunity to view her assailant. She directed police to the house and room where she was raped - and that is where Petitioner stayed during the time-frame. The DNA match then cinched the case for the prosecution. This claim was reasonably rejected by the state court.

B. Illegal Search - Failure to Object (Claim 2)

Petitioner next claims that his rights under the Fourth Amendment were

violated when the owner of the house consented to a police search of the house. Petitioner asserts though he did not own the home, the owner did not have authority to consent to a search of the room the owner allowed him to sleep in while he assisted him in refurbishing the house. Petitioner asserts that his trial counsel was ineffective in failing to raise this claim prior to trial.

First, with respect to the Fourth Amendment claim itself, Federal courts will not address such a claim on habeas review if the petitioner had a full and fair opportunity to litigate the claim in state court and the presentation of the claim was not thwarted by any failure of the state's corrective processes. See *Stone v. Powell*, 428 U.S. 465, 494-95 (1976). "All that *Stone v. Powell* requires is an 'opportunity' for full and fair consideration of the claim for suppression; it is up to the claimant and his counsel to decide what use, if any, is to be made of the opportunity." *Jennings v. Rees*, 800 F.2d 72, 77 (6th Cir. 1986). A court must perform two distinct inquiries when determining whether a petitioner may raise an illegal arrest claim in a habeas action. First, the "court must determine whether the state procedural mechanism, in the abstract, presents the opportunity to raise a Fourth Amendment claim. Second, the court must determine whether presentation of the claim was in fact frustrated because of a failure of that mechanism." *Machacek v.*

*Hofbauer*, 213 F.3d 947, 952 (6th Cir. 2000) (quoting *Riley v. Gray*, 674 F.2d 522 (6th Cir. 1982)).

Michigan has a procedural mechanism presenting "an adequate opportunity for a criminal defendant to raise a Fourth Amendment claim." *Robinson v. Jackson*, 366 F. Supp. 2d 524, 527 (E.D. Mich. 2005). This procedural mechanism is a motion to suppress, ordinarily filed before trial. See *People v. Ferguson*, 135 N.W.2d 357, 358-59 (Mich. 1965) (describing the availability of a pre-trial motion to suppress); see also *People v. Harris*, 291 N.W.2d 97, 99 (Mich. Ct. App. 1980) (analyzing the legality of a warrantless search, seizure, and arrest even though raised for the first time on appeal). Consequently, Petitioner is entitled to relief on this claim only if he shows that he was prevented from litigating the Fourth Amendment issue by a failure of Michigan's procedural mechanism.

Petitioner makes no such showing. He neither alleges nor establishes that he was precluded from challenging his arrest at the time of trial, on appeal, or on collateral review. Petitioner's Fourth Amendment claim is therefore not cognizable on federal habeas review pursuant to *Stone v. Powell*.

Petitioner may, however, assert that his counsel was ineffective for

failing to raise a Fourth Amendment challenge. See *Kimmelman v. Morrison*, 477 U.S. 365, 382-83 (1986). The Michigan Court of Appeals rejected this claim, essentially finding that Petitioner was not prejudiced by the failure to raise the challenge, both because it would have failed and because of the strong evidence of Petitioner's guilt that was unrelated to the search of the room:

> The search did not impact the DNA or photo array evidence, nor did it affect the home owner's testimony identifying defendant as the person who was using the room at the time of the abduction and rape. Moreover, the home owner consented to the search, and there was evidence indicating that he had, minimally, common authority over the room, or in other words, joint access and control, thereby providing him with the authority to consent to the search. *People v. Brown*, 279 Mich. App. 116, 131 (2008). The evidence did not suggest that defendant had exclusive use of the room. Furthermore, under the circumstances presented, the officer's belief in the home owner's authority to consent was objectively reasonable, rendering the search constitutionally sound.

*Trotter*, 2013 WL 1165257, at *2.

This decision was reasonable. No Fourth Amendment challenge was raised because it likely would have failed. The owner of the home testified that he had a "semi-verbal" agreement with Petitioner that Petitioner would help him fix up houses and the owner would then help Petitioner find a house. Petitioner stayed at the house, but at best he had minimal joint-control of the

room where the rape occurred. See Trial Tr. 8/24/11, at 28-32, Dkt. 27-8, Pg ID 1145-49. Trial counsel is under no duty to file meritless motions; and therefore deficient performance cannot be proven. *Knapp v. White*, 296 F. Supp.2d 766,782 (E.D. Mich.2003). The evidence of Petitioner's guilt was overwhelming. Even a successful suppression motion would not have altered the outcome of the trial. The identification testimony and the DNA evidence were obtained independently from the search. The claim is without merit.

C. Prosecutorial Misconduct (Claim 3)

Petitioner next claims that the prosecutor committed various acts of misconduct during closing argument. He asserts that the prosecutor asserted facts not supported by the evidence and improperly bolstered the credibility of the victim. Petitioner does not specifically identify in his petition the argument the prosecutor presented at closing which Petitioner claims were improper.

To be entitled to habeas relief on a prosecutorial misconduct claim, the petitioner must show that the prosecutor's conduct so infected the trial so as to render the conviction fundamentally unfair. *Parker v. Matthews*, 567 U.S. 37 (2012); *Gillard v. Mitchell*, 445 F.3d 883, 897 (6th Cir. 2006) (citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). If the misconduct was

harmless, then as a matter of law, there was no due-process violation. See *Greer v. Miller*, 483 U.S. 756, 765 & n.7 (1987). In federal habeas, this means asking whether the error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623, 637-38 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)); see also *Fry v. Pliler*, 551 U.S. 112, 121-22 (2007).

The Michigan Court of Appeals rejected Petitioner's claim as follows:

> Next, defendant argues that he was denied a fair trial when the prosecutor, during closing argument, stated facts not in evidence that constituted inadmissible hearsay and when, also during closing argument, the prosecutor improperly bolstered the victim's credibility by using the victim's prior hearsay statements. Defendant relies on a brief snippet of the prosecutor's closing argument. To the extent that the prosecutor made any improper remarks, we cannot conclude, given the mountainous evidence of guilt, that this unpreserved claim of error prejudiced defendant, nor can it be said that defendant is actually innocent or that any presumed error seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *Carines*, 460 Mich. at 763-764. Furthermore, the trial court's cautionary instructions that arguments and statements by counsel are not evidence and that the jurors must only consider properly admitted evidence alleviated any prejudicial effect of the prosecutor's remarks. *People v. Stimage*, 202 Mich. App. 28, 30 (1993).

*Trotter*, 2013 WL 1165257, at *3.

This decision was not unreasonable. The state appellate court's characterization of the evidence of Petitioner's guilt was "mountainous."

Despite his protestations, there is no serious question as to his identity as the perpetrator. The victim was able to identify Petitioner as the perpetrator and the DNA results confirmed the victim's identification of Petitioner. The Court's review of the prosecutor's closing argument does not support Petitioner's claim of prosecutorial misconduct. The prosecutor summarized the victim's testimony and how the other evidence corroborated such testimony. The prosecutor's closing remarks were not particularly improper, and given the weight of the evidence, they did not play a significant role in the outcome of the case. *Alder v. Burt*, 240 F. Supp. 2d 651, 670 ( E.D. Mich. Jan. 22, 2003). The claim was reasonably rejected by the state court.

D. Admission of Evidence - Failure to Object (Claim 4)

Petitioner next claims that the prosecutor failed to establish that the buccal swab taken from him was the same one that was used by the Michigan State Police lab in making the DNA comparison to the samples taken from the victim. He further alleges that his counsel was ineffective for failing to object to admission of the DNA identification evidence on this basis.

As the Michigan Court of Appeals found, the claim hinges on a mistaken assumption:

> Here, the prosecution established that the buccal swab used
> to compile a DNA profile for defendant was the same buccal swab

that an officer had collected from defendant in open court at his preliminary examination. The officer testified that he collected the buccal swab from defendant, placed the swab in an envelope, filled out evidence tag E38394304, and gave it to another officer in the courtroom, who then transported the envelope to the Michigan State Police. An employee of the state police, qualified as an expert in serology at trial, testified that she received a sealed envelope with defendant's buccal swab from the officer who had transported it from the courtroom. The serology expert testified that the buccal swab from defendant was never near the rape kit and that everything was kept in separate sealed containers. She did not cut part of defendant's buccal swab for DNA testing on the same day as she tested the rape kit for seminal fluid. A forensic scientist with the state police, who was qualified as an expert in DNA analysis, received a cutting from defendant's buccal swab and conducted a DNA analysis on it. The DNA profile from defendant's buccal swab matched the DNA from the seminal fluid on the victim's vaginal swab.

It appears that the officer who collected the buccal swab from defendant at the preliminary examination made a mistake in his trial testimony when he said that he labeled the swab with evidence tag number E38394304, as this was the evidence tag number for the rape kit. Except for this discrepancy, a complete chain of custody for defendant's buccal swab was established at trial. This mistake went to the issue of weight and did not render the DNA evidence inadmissible. Furthermore, it is highly unlikely that the officials with the Michigan State Police mixed up defendant's buccal swab and the victim's rape kit, as defendant seems to imply. The envelope with defendant's buccal swab contained only that swab, and the victim's rape kit contained two buccal swabs, one vaginal swab, two vaginal smears, one microscopic vaginal swab, two rectal smears, and a bag labeled undergarments. Defendant has not shown that the admission of the DNA evidence was improper.

*Trotter*, 2013 WL 1165257, at *3-4.

The state appellate court's factual finding that the officer made a mistake regarding the tag number in his testimony is presumptively accurate. correct. The habeas statute provides that, in a habeas case, "a determination of a factual issue made by a state court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see *Ramonez v. Berghuis*, 490 F.3d 482, 490 (6th Cir. 2007). Petitioner has offered no evidence, let alone clear and convincing evidence, that the factual determination made by the Michigan Court of Appeals was incorrect. As noted by the state court, the contents of the two envelopes in question were markedly different. The one containing Petitioner's known sample had a single swab. The other one contained eight samples taken from the victim and a pair of her undergarments. The claim is without merit since Petitioner has not shown that state court's finding was incorrect.

E. Failure to Admit Guilt at Sentencing (Claim 11)

Petitioner next asserts that his sentence was increased because he maintained his innocence at the sentencing hearing. The Michigan Court of Appeals rejected the claim as follows:

> While a court may not base a sentence, even in part, on a defendant's refusal to admit guilt, *People v. Conley*, 270 Mich.

App. 301, 314 (2006), it may consider a lack of remorse in determining a sentence, *People v. Houston*, 448 Mich. 312, 323 (1995). The trial court never made any statements about defendant refusing to admit guilt; rather, the court noted that defendant's "lack of remorse [was] reprehensible." It is not even clear that lack of remorse played a role in the sentence, where the court appeared to be focused more on the facts of the case in imposing sentence, noting that the victim, a 15-year-old girl, was snatched off the streets by defendant and raped and held captive for several hours, with DNA evidence establishing defendant's guilt.

*Trotter*, 2013 WL 1165257, at *4.

The Fifth Amendment privilege to remain silent "is fulfilled only when a criminal defendant is guaranteed the right 'to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty . . . for such silence.'" *Estelle v. Smith*, 451 U.S. 454, 468 (1981)(quoting *Malloy v. Hogan*, 378 U.S. 1, 8 (1964)). And no adverse inference from a defendant's silence may be made at sentencing. *Mitchell v. United States*, 526 U.S. 314, 326 (1999). "By holding [a defendant's] silence against [him or] her in determining the facts of the offense at the sentencing hearing, [a court] impose[s] an impermissible burden on the exercise of the constitutional right against compelled self-incrimination." *Id.* at 330.

As the Michigan Court of Appeals found, the trial court did not seem to base its sentence on Petitioner's refusal to admit guilt. *C.f. Ketchings v.*

*Jackson*, 365 F.3d 509 (6th Cir. 2004) (trial court violated Petitioner's Fifth Amendment rights where trial court sentenced Petitioner to twice the recommended guideline range after noting that Petitioner failed to admit guilt despite giving long allocution expressing remorse). Here, Petitioner did not express remorse, but maintained at sentencing that the DNA evidence was tampered with and that he was not the perpetrator. Dkt. 27-10, at 10-11. The trial court focused on the harm caused to the victim, the Petitioner's lack of remorse, and his prior conduct with drug-addicted women. *Id.*, at 12. These were proper considerations. *In re Cook*, 551 F.3d 542, 551 (6th Cir. 2009) ("It is well established that a defendant's remorse-or lack thereof-is an appropriate consideration in meting out punishment."); *United States v. Castillo-Garcia*, 205 F.3d 887, 889 (6th Cir. 2000) (lack of true remorse is valid consideration under federal sentencing guideline providing for downward adjustment based upon acceptance of responsibility). Lack of remorse was a proper consideration by the trial court.  However, Petitioner has not shown that the trial court's sentence was solely based on Petitioner's assertion that he was innocent.

F. Inaccurate Sentencing Information (Claim 12)

Petitioner's next claim asserts that his sentencing guidelines were

scored based on inaccurate information. Specifically, he complains that the presentence investigation report indicated that he told the probation agent who prepared the report that two other women had accused him of rape, but that they were crackheads who traded sex for drugs who wanted to have sex with him.

"There is no federal constitutional right to a pre-sentence investigation and report," and "[t]he mere presence of hearsay or inaccurate information in a pre-sentence report does not constitute a denial of due process." *Allen v. Stovall*, 156 F. Supp. 2d 791, 797 (E.D. Mich. 2001). A state court's alleged misapplication of state sentencing laws is "a matter of state concern only," and "federal habeas corpus does not lie for errors of state law." *Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003) (citing *Estelle v. McGuire*, 502 U.S. 62, 67 (1991)). Petitioner's sentence of 35 to 60 years for his first-degree criminal sexual conduct conviction falls within the statutory maximum of life imprisonment for the offense, and the severity of a sentence that falls within the limits set by statute is not a ground for habeas corpus relief. *Townsend v. Burke*, 334 U.S. 736, 741 (1948).

Nevertheless, Petitioner alleges that the trial court relied on inaccurate information at sentencing, in violation of his constitutional rights. A sentence

violates the constitutional right to due process if it is based on "misinformation of constitutional magnitude," *United States v. Tucker*, 404 U.S. 443, 447 (1972), or on "extensively and materially false" information which the defendant had no opportunity to correct through counsel. *Townsend*, 334 U.S. at 741.

After defense counsel addressed the information regarding Petitioner's conduct with other women, Petitioner addressed the court and indicated only that he never operated a crack house or traded drugs for sex. Petitioner was given an opportunity to dispute the allegedly false information through his own allocution and through counsel. There was no cognizable constitutional violation. Petitioner has not demonstrated entitlement to relief on the basis of this sentencing claim.

G. Right to DNA Testing (Claims 13 and 14)

Petitioner raises several claims asserting that he was entitled under Michigan law to new DNA testing during his state post-conviction review proceeding to prove his innocence.

There is no freestanding substantive due process right to DNA testing to prove one's innocence on post-conviction review. *Dist. Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 72-72 (2009). The Sixth Circuit

has held that Michigan law governing procedures for post-conviction DNA testing in criminal cases is more comprehensive than the state procedures sanctioned in *Osborne*, and, therefore, adequately protects the due process rights of prisoners. See *In re Smith*, 349 F. App'x 12, 15-16 (6th Cir. 2009). Petitioner has failed to demonstrate entitlement to relief with respect to these claims. Petitioner has no constitutional right to DNA testing to prove his innocence on post-conviction review.

H. Procedural Default - (Claims 5 through 10)

Petitioner's remaining claims (his fifth through tenth) were raised in the state courts in his motion for relief from judgment and the appeal that followed. Respondent contends that review of these claims is barred by Petitioner's failure to raise these claims in the Michigan Court of Appeals during his appeal of right. Petitioner's remaining claims are dismissed because they are procedurally defaulted.

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred unless petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v.*

*Thompson*, 501 U.S. 722, 750-751 (1991). If a petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533 (1986). In an extraordinary case, where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 479-480 (1986). However, to be credible, such a claim of innocence requires a petitioner to support the allegations of constitutional error with new reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624 (1998).

Michigan Court Rule 6.508(D)(3) provides that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief that could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom. For purposes of a conviction following a trial, "actual prejudice" means that "but for the alleged error, the defendant would have had a reasonably likely chance of acquittal." MICH. CT. R. 6.508(D)(3)(b)(I).

The Supreme Court rejected Petitioner's post-conviction appeal "because the defendant failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." This order did not refer to subsection (D)(3), and it did not mention Petitioner's failure to raise these claims in the Michigan Court of Appeals on direct review as the rationale for rejecting his post-conviction claims. Because the form order citing Rule 6.508(D) is ambiguous as to whether it refers to procedural default or a denial of post-conviction relief on the merits, it is unexplained. See *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010). This Court must "therefore look to the last reasoned state court opinion to determine the basis for the state court's rejection" of Petitioner's claims. *Id.*

In the present case, the Michigan Court of Appeals explicitly relied on Rule 6.508(D)(3)(a) and (b) in rejecting Petitioner's post-conviction appeal. Furthermore, the trial court order denying the motion for relief from judgment also relied on Rule 6.508(D)(3). Dkt. 27-13, at 10. Therefore, the last explained decisions clearly relied on a state procedural basis for denying relief. As such, Petitioner's post-conviction claims are procedurally defaulted. See *Ivory v. Jackson*, 509 F.3d 284, 292-293 (6th Cir. 2007); see also *Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005).

Petitioner alleges that his procedural default should be excused because his appellate counsel provided him with ineffective assistance and because he is actually innocent. Petitioner, however, has not shown that appellate counsel was ineffective. It is well established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. See *Jones v. Barnes*, 463 U.S. 745, 751 (1983). The Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the ... goal of vigorous and effective advocacy. ... Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id.* at 754.

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). "The hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *Smith v. Murray*, 477 U.S. at 536 (quoting *Barnes*, 463 U.S. at 751-752). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome."

*Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," which is defined as an issue which was obvious from the trial record and would have resulted in a reversal on appeal. *Meade v. Lavigne*, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Petitioner has failed to show that appellate counsel's performance fell outside the wide range of professionally competent assistance by omitting his newly-raised claims in his initial appeal. Appellate counsel filed a substantial appellate brief which raised an number of claims that Petitioner presents as his lead issues in the present habeas petition. Petitioner also filed his own supplemental pro se brief that did not include these additional claims. Petitioner has not shown that his appellate counsel's strategy in presenting these claims and not raising other claims was deficient or unreasonable. For the reasons stated in Respondent's answer to the petition for writ of habeas corpus and the trial court's opinion, none of the claims raised by Petitioner in his post-conviction motion were "dead-bang winners." The evidence presented against Petitioner at trial was overwhelming, and he has not shown any probability that the result of his proceeding would have been any different even if his claims had merit.

Because Petitioner has not demonstrated any cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith*, 477 U.S. at 533. Petitioner has not presented any new reliable evidence to support any assertion of innocence that would allow this Court to consider these claims as a ground for a writ of habeas corpus, in spite of the procedural default. Petitioner's sufficiency of evidence claim is insufficient to invoke the actual innocence doctrine to the procedural-default rule. See *Malcum v. Burt*, 276 F. Supp. 2d 664, 677 (E.D. Mich. 2003). As discussed above, Petitioner's claim that the DNA samples were somehow mishandled or mixed hinges on a single misstatement by a police officer, and does not point to any impropriety. Because Petitioner has not presented any new reliable evidence that he is innocent of these crimes, a miscarriage of justice will not occur if the court declined to review the procedurally defaulted claims on the merits. See *Welch v. Burke*, 49 F. Supp. 2d 992, 1007 (E.D. Mich. 1999). In conclusion, Petitioner is not entitled to habeas relief on his remaining claims because they are all procedurally barred from review.

Because none of Petitioner's claims merit relief, the petition will be denied.

## IV. Certificate of Appealability

Before Petitioner may appeal this Court's dispositive decision, "a circuit justice or judge" must issue a certificate of appealability. See 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).To satisfy § 2253(c)(2), Petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation and internal quotation marks omitted). The Court finds that reasonable jurists would not debate the resolution of his claims. The Court will therefore deny a certificate of appealability with respect all of Petitioner's claims. Furthermore, if Petitioner chooses to appeal the Court's decision, he may not proceed in forma pauperis because an appeal could not be taken in good faith. 28 U.S.C. § 1915(a)(3).

## V. Conclusion

Accordingly, the Court 1) **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus, 2) **DENIES** a certificate of appealability, and 3) **DENIES**

permission to appeal in forma pauperis.

**SO ORDERED.**

S/Denise Page Hood
Denise Page Hood
Chief Judge, United States District Court

Dated: November 30, 2017

I hereby certify that a copy of the foregoing document was served upon counsel of record on November 30, 2017, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager